**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| CHRISTINA GILLASPIE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:19-cv-00453-DCN-MHC |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| CARLOS DEL TORO, *Secretary of the Navy*, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on United States Magistrate Judge Molly H. Cherry's report and recommendation ("R&R"), ECF No. 93, that the court grant defendant Carlos Del Toro, Secretary of the Navy's[1] ("defendant") motion for summary judgment, ECF No. 79. For the reasons set forth below, the court adopts the R&R and grants the motion.

## I.  BACKGROUND

The R&R ably recites the facts, and the parties do not object to the R&R's recitation thereof.[2] Therefore, the court will only briefly summarize material facts as they appear in the R&R for the purpose of aiding an understanding of the court's legal analysis.

---

[1] Del Toro became Secretary of the Navy on August 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Del Toro is substituted as the defendant in this matter.

[2] Plaintiff generally objects that the R&R in its entirety fails to consider the evidence in a light most favorable to her. The court will not reconsider the entirety of the background section of the R&R on the basis of this general objection. To the extent plaintiff raises specific objections to the R&R's consideration of certain facts, the court addresses those objections in its discussion of the merits of defendant's motion for summary judgment below.

Plaintiff Christina Gillaspie ("Gillaspie") is a female, over the age of forty, and an Asian-Pacific Islander.  She is unable to hear in her left ear due to a degenerative condition.  Gillaspie was a civilian employee of the Navy and worked at the Space and Naval Warfare Systems Command ("SPAWAR") in North Charleston, South Carolina from September 18, 2006 until her employment was terminated on November 1, 2019.  Between August 2014 and November 2018, Gillaspie filed at least five different Equal Employment Opportunity ("EEO") complaints regarding various acts of alleged discrimination and retaliation at SPAWAR.  Three of these complaints form the basis of this civil action, while the claims raised in two other complaints were dismissed with prejudice by this court in a prior lawsuit.  Specifically, in this action, Gillaspie alleges causes of action for employment discrimination and retaliation pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 623(a) ("ADEA"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16(c) ("Title VII"); and the Americans with Disabilities Act, 42 U.S.C. § 126, et seq. ("ADA"), as applied through § 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791, et seq.  ECF No. 39, Amend. Compl.[3]

Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C), all pretrial proceedings in this case were referred to Magistrate Judge Cherry.  On July 26, 2021, defendant filed a motion for summary judgment.  ECF No. 79.  On January 24, 2022, Magistrate Judge Cherry issued the R&R, recommending that the court grant the motion.  ECF No. 93.  On February 17, 2022, Gillaspie objected

---

[3] The specific facts underlying these claims are extensive and are summarized in the R&R.  Again, the court defers to the R&R's summary for background purposes and addresses Gillaspie's objections to the rendition of those facts in its discussion of Gillaspie's claims infra.

to the R&R.  On March 17, 2022, defendant responded to Gillaspie's objections.  ECF No. 102.  Gillaspie did not file a reply.  As such, the matter is now ripe for the court's review.

## II.  STANDARD

This court is charged with conducting a de novo review of any portion of a magistrate judge's R&R to which specific, written objections are made.  28 U.S.C. § 636(b)(1).  A party's failure to object is accepted as agreement with the conclusions of a magistrate judge.  See Thomas v. Arn, 474 U.S. 140, 149–50 (1985).  The recommendation of the Magistrate Judge carries no presumptive weight, and the responsibility to make a final determination rests with this court.  Mathews v. Weber, 423 U.S. 261, 270–71 (1976).  However, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in a magistrate judge's proposed findings.  Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  In the absence of a specific objection, the court reviews the R&R only for clear error.  Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted).

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### III.   DISCUSSION

In her operative amended complaint, Gillaspie alleges four causes of action: (1) age discrimination under the ADEA, Amend. Compl. at 18–19; (2) disability discrimination and hostile work environment under the Rehabilitation Act, id. at 19–21; (3) race and gender discrimination in violation of Title VII, id. at 21–22; and (4) retaliation under the ADEA, Rehabilitation Act, and Title VII, id. at 22–23. Defendant moved for summary judgment on all claims pursuant to Federal Rule of Civil Procedure 56. In her response in opposition to defendant's motion, Gillaspie agreed to dismiss her age discrimination claim under the ADEA and her race and gender discrimination claim under Title VII. Accordingly, the Magistrate Judge recommended that the court grant summary judgment as to Gillaspie's first and third causes of action. Gillaspie does not object to that recommendation, and the court therefore reviews the same for clear error.

Finding none, the court adopts the R&R in this respect and grants summary judgment in defendant's favor on Gillaspie's first and third causes of action.

The Magistrate Judge further recommended that the court grant summary judgment as to Gillaspie's second and fourth causes of action on the merits. Gillaspie objects to those portions of the R&R as unsupported by the evidence of record. Accordingly, the court considers Gillaspie's objections related to her disability discrimination claim under the Rehabilitation Act, her hostile work environment claim under the Rehabilitation Act, and her claim for retaliation under the ADEA, Rehabilitation Act, and Title VII in turn below, ultimately overruling each objection and granting summary judgment on all claims.

### A.  Discrimination Under the Rehabilitation Act

In her second cause of action in the amended complaint, Gillaspie alleges a claim for disability discrimination and hostile work environment under the Rehabilitation Act based on the claims she raised in her first EEO complaint, filed in 2014. Amend. Compl. ¶¶ 111–13; ECF No. 39-1 at 2–3. Specifically, she alleges:

> [Gillaspie] was discriminated against by defendant based on her hearing disability (total hearing loss, left ear) when defendant's agent, Ryan Gunst [("Gunst")], made repeated comments regarding [Gillaspie]'s hearing disability including remarks that [Gillaspie]'s "cybernetics" were "increasing" regarding a new hearing aid enhancement that [Gillaspie] was required to wear; making complaints about [Gillaspie] being "disrespectful of his position" because she "raised her voice" at him; calling her disability "bullshit"; repeatedly bringing up the volume of [Gillaspie]'s voice; including the voice volume control matter in a performance appraisal that [a]ffected [Gillaspie]'s pay.

Amend. Compl. ¶ 113.

The Rehabilitation Act prohibits federal agencies from discriminating against its employees on the basis of disability. See 29 U.S.C. § 794; Hannah P. v. Coats, 916 F.3d

327, 336 (4th Cir. 2019); Magazine v. Donahoe, 2013 WL 4056313, at *14 (D.S.C. Aug.

12, 2013) ("The Rehabilitation Act prohibits discrimination 'against a qualified

individual on the basis of disability in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job training, and other

terms, conditions, and privileges of employment.") (quoting 42 U.S.C. § 12112(a)).

"[T]he Rehabilitation Act . . . provides the exclusive judicial remedy for claims based

upon a federal employee's disability." Magazine, 2013 WL 4056313, at *14 (internal

citations omitted). "Because the Rehabilitation Act and the ADA employ the same

standards and purposes, courts may rely on case law addressing claims under either

statute in analyzing a case of disability discrimination." Id. A plaintiff may avoid

summary judgment on a disability discrimination claim through two avenues of proof: by

presenting direct evidence of discrimination or by relying on the burden-shifting

framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Jones

v. Leavitt, 454 F. Supp. 2d 459, 463 (M.D.N.C. 2006) (citing Ennis v. Nat'l Ass'n of

Bus. & Educ. Radio, Inc., 53 F.3d 55 (4th Cir. 1995)); see Coats, 916 F.3d at 342; Laber

v. Harvey, 438 F.3d 404, 430 (4th Cir. 2006); Marshall v. AT&T Mobility, 793 F. Supp.

2d 761, 763 (D.S.C. 2011).

  The R&R found that Gillaspie failed to establish her discrimination claim through

direct evidence and likewise found that she failed to establish a prima facie case of

discrimination under the McDonnell Douglas burden-shifting framework. Gillaspie specifically objects to each of these findings, which the court addresses below.

### 1. Direct Evidence

Direct evidence is "evidence that the employer 'announced, admitted, or otherwise unmistakably indicated that [the forbidden consideration] was a determining factor'" in an employment decision. Stover v. Lincoln Publ'g, Inc., 1995 WL 764180, at *2 (4th Cir. 1995) (alteration in original) (quoting Cline v. Roadway Express, Inc., 689 F.2d 481, 485 (4th Cir. 1982)). "If believed, direct evidence 'would prove the existence of a fact . . . without any inference or presumptions.'" Jordan v. Radiology Imaging Assocs., 577 F.Supp.2d 771, 779 (D. Md. 2008) (quoting O'Connor v. Consol. Coin Caterers Corp., 56 F.3d 542, 548 (4th Cir. 1995), rev'd on other grounds, 517 U.S. 308 (1996)). In her opposition to the motion for summary judgment, Gillaspie argued that the evidence that Gunst called her disability "bullshit" and that he inserted "negative comments about the volume of [Gillaspie]'s voice" in her performance review is sufficient to establish her disability discrimination claim through direct evidence. ECF No. 85 at 28. Gillaspie does not dispute that her then-supervisor, Philip Leonard ("Leonard"), completed her 2014 Performance Appraisal, rather than Gunst. However, Gillaspie argued that Gunst's input to Leonard that Gillaspie raised her voice at him caused her "Overall Assessed Score" on her 2014 Performance Appraisal to be 5.8, while her "Expected Score" was 6.0. See ECF No. 79-10. The Magistrate Judge concluded

this evidence did not amount to direct evidence of disability discrimination sufficient to survive summary judgment.

The R&R explained that the 2014 Performance Appraisal at issue made no mention of Gillaspie's hearing disability or the volume of her voice. See ECF No. 79-10. Rather, the appraisal discussed Gillaspie's failure to keep senior level employees informed, failure to communicate with customers in accordance with her portfolio leader's directions, failure to maintain "professional decorum," and failure to follow directions provided by leaders in the organization. Id. The R&R also explained that Gunst's "bullshit" comment was made months before the 2014 Performance Appraisal. Accordingly, the R&R found that this isolated comment was not made in connection with the alleged adverse action and accordingly was insufficient to prove discriminatory animus. See ECF No. 98 at 27 (citing Brinkley, 180 F.3d at 608 ("[T]o prove discriminatory animus, the derogatory remark cannot be stray or isolated and unless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of discrimination.")) (internal quotation marks omitted). Overall, the R&R concluded that Gillaspie produced no direct evidence on which she could rely to avoid summary judgment.

Gillaspie objects to this finding, arguing that she produced sufficient direct evidence of discrimination. Specifically, Gillaspie cites her testimony that she had verbal conversations with Leonard wherein he confirmed that her 2014 Performance Appraisal was negatively impacted by Gunst's complaint about Gillaspie raising her voice at him. The court does not find Gillaspie's testimony on the matter direct evidence of an intent to discriminate. Assuming arguendo that Gunst's complaint impacted Gillaspie's

performance review in a negative manner, a reasonable jury could not infer from Gillaspie's conversation with Leonard that he intended to discriminate against Gillaspie or had a discriminatory motive in appraising Gillaspie's performance.  Rather, the complaint about the volume of Gillaspie's voice and her supervisor's alleged consideration thereof in evaluating her performance merely evinces that Gunst, and by extension Gillaspie's supervisor, perceived that Gillaspie was being insubordinate. Whether that perception was accurate, or even fair, in light of Gillaspie's disability is of no moment.  Indeed, "[a]n employer is free to [discipline or] discharge a disabled person for misconduct, even if the misconduct is related to his disability." Shiflett v. GE Fanuc Automation Corp., 151 F.3d 1030, 1030 (4th Cir. 1998) (finding that termination related to inappropriate and insubordinate behavior was not discriminatory, even though plaintiff argued that "if he was loud and pointed his finger, it was a result of his deafness, in that he cannot hear his own voice to modulate it and uses his hands for language").  In sum, a reasonable jury would not consider Leonard's alleged statement that he considered Gillaspie raising her voice at Gunst in preparing her 2014 Performance Appraisal to be equivalent to announcing, admitting, or otherwise indicating that Gillaspie's disability was a determining factor in Gillaspie's lower than expected score in that appraisal.  The court therefore adopts the R&R's finding that Gillaspie produced no direct evidence of discrimination.

### 2.  **McDonnell Douglas Burden-Shifting Framework**

Because Gillaspie has not established her disability discrimination claim through direct evidence, she must rely on the burden-shifting framework of McDonnell Douglas to establish her claim.  Under the McDonnell Douglas burden-shifting framework,

Gillaspie must first establish a <u>prima facie</u> case of discrimination. 411 U.S. at 802. If she establishes a <u>prima facie</u> case, the burden shifts to defendant to provide a legitimate, nondiscriminatory reason for its conduct. <u>See Coats</u>, 916 F.3d at 342. If defendant provides such a reason, Gillaspie "bears the ultimate burden of persuasion" and "must show by a preponderance of the evidence that the proffered reason was a pretext for discrimination." <u>Id.</u> (quoting <u>Perry v. Comput. Scis. Corp.</u>, 429 F. App'x 218, 220 (4th Cir. 2011)).

### a. <u>Prima Facie</u> Case of Discrimination

Gillaspie has the initial burden of establishing a <u>prima facie</u> case of discrimination by showing that: (1) she is disabled; (2) she was otherwise qualified for the position; and (3) she suffered an adverse employment action solely on the basis of her disability. <u>Coats</u>, 916 F.3d at 342 (citing <u>Perry</u>, 429 F. App'x at 219–20; <u>Constantine v. Rectors & Visitors of George Mason Univ.</u>, 411 F.3d 474, 498 (4th Cir. 2005)). The R&R found that the only element of the <u>prima facie</u> case at issue is the third and final element— whether Gillaspie established that she suffered an adverse employment action solely on the basis of her disability. R&R at 27. The R&R found that Gillaspie had failed both (1) to make a <u>prima facie</u> case of disability discrimination because she failed to show that the 2014 Performance Appraisal was an adverse action; and (2) to show that this adverse action was taken solely on the basis of her protected class. <u>Id.</u> at 27–29.

### i. Adverse Employment Action

Gillaspie alleges that her receipt on her 2014 Performance Appraisal of a "Performance Rating" of "Acceptable," and an "Overall Assessed Score" of 5.8, below the "Expected Score" of 6.0, was an adverse employment action. <u>See</u> ECF No. 79-10 at

2.  In the discrimination context, "[a]n adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment." Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (internal quotation marks omitted).  "[A] poor performance evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment."  James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 377 (4th Cir. 2004); accord White v. Baxter Healthcare Corp., 533 F.3d 381, 402 (6th Cir. 2008) ("In general, a negative performance evaluation does not constitute an adverse employment action unless the evaluation has an adverse impact on an employee's wages or salary.") (internal quotation marks omitted); Grube v. Lau Indus., Inc., 257 F.3d 723, 729 (7th Cir. 2001) ("[N]egative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions.").

In her response in opposition to summary judgment, Gillaspie argued that the 2014 Performance Appraisal constituted an adverse employment action because it had a detrimental impact on her compensation and future earnings.  Specifically, Gillaspie testified that without the negative input from Gunst, she would have received a positive review and obtained a higher percentage pay raise.  ECF No. 85 at 28–31.  The Magistrate Judge determined that Gillaspie's position in this regard was "conjectural and not supported by the record."  R&R at 29.  Because Gillaspie produced no evidence supporting her contention that the 2014 Performance Appraisal negatively affected her ability to get a raise, the Magistrate Judge found that Gillaspie failed to make a prima

facie showing that the 2014 Performance Appraisal constituted an adverse employment action.

Gillaspie objects and argues that the Magistrate Judge erred in finding that the 2014 Performance Appraisal did not impact her ability to get a raise. In support of this contention, Gillaspie cites only her own speculation and her 2013 Performance Appraisal. Without any evidence to support her assertion, Gillaspie claims that she expected a salary raise of 9%, or $6,814.20. ECF No. 98 at 9–10.[4] Such speculation is entirely insufficient to create a genuine issue of material fact as to whether her 2014 Performance Appraisal negatively impacted her raise. Thus, the court turns to the 2013 Performance Appraisal to determine whether it is sufficient evidence of such an impact.

In both 2013 and 2014, Gillaspie received a "Performance Rating" of "Acceptable." ECF No. 79-10; ECF No. 102-2. In 2013, Gillaspie received an "Overall Assessed Score" of 5.8, which was above her "Expected Score" of 5.4. ECF No. 102-2. She also received a $3,275 salary increase that year, making her salary $112,446. Id. She did not receive a bonus. Id. As the court previously noted, in 2014, Gillaspie received an "Overall Assessed Score" of 5.8, which was below the "Expected Score" of 6.0. ECF No. 79-10 at 2. That year, Gillaspie received a $1,135 salary increase and a $1,135 bonus. ECF No. 79-10. Notably, Gillaspie concedes that "she requested and was granted a reconsideration request" for the 2014 appraisal, ECF No. 98 at 13, and that her "Technical Score [was increased] to a rating of 9," ECF No. 102-1. With this score

---

[4] Gillaspie cites to "ROI at 22-23" to support this assertion, without attaching any document or pointing to where it is in the record. ECF No. 98 at 9–10. Defendant, in reply, attaches the relevant two pages, and Gillaspie's citation appears to be no more than a declaration by Gillaspie with the same assertion, again without any evidence or sufficient explanation to support it.

adjustment, Gillaspie's "Overall Assessed Score" would be 6.5, above her "Expected Score" of 6.  Nevertheless, Gillaspie argues that, despite this adjustment, "[Gillapsie] still received a salary increase for 2014 that was far less than she had received in 2013 and was well below the average increase awarded for that year."  ECF No. 98 at 13.

The court does not find that the evidence of Gillaspie's 2013 Performance Appraisal and salary increase for that year creates a genuine issue of material fact to survive summary judgment.  The mere fact that the salary increase and bonus Gillaspie received in 2014 were slightly less than the increase she received in 2013 does not show that the terms or conditions of Gillaspie's employment were detrimentally altered as a result of her disability—particularly when her overall pay increased rather than decreased in 2014.  Gillaspie provides no evidence, other than her own speculative testimony, to suggest that the differential in the amount of <u>increase</u> she received in 2013 and 2014— approximately $1,000—was a result of her 2014 Performance Appraisal and not due to factors entirely unrelated to Gillaspie, such as SPAWAR's operating margins that year. Gillaspie does not cite any SPAWAR policy, guideline, or communication suggesting that salary increases were correlated to assessed scores on performance reviews. Gillaspie's contention that her 2014 salary increase was still "far less" than the 2013 increase even after her score was reconsidered suggests that the increases were not, in fact, tied to performance scores.  Although her objections state that even after her request for reconsideration was granted, Gillaspie's salary increase "was well below the average increase awarded for that year," the documents she cites provide no support for that contention.  Indeed, Gillaspie provides no evidence showing the amount of the average salary increase—much less for employees in similar positions and with similar

experience as Gillaspie.  At best, Gillaspie provides her own subjective belief that her salary increase would have been higher but for her disability.  However, that belief is simply not enough to establish that she suffered an adverse employment action.  Overall, a reasonable jury could not, without impermissibly speculating, find that Gillaspie's 2014 Performance Appraisal negatively affected her earnings.  Therefore, the court adopts the R&R's conclusion that Gillaspie failed to make a prima facie showing of an adverse employment action.  This alone dooms Gillaspie's discrimination claim under the third element of the McDonnell Douglas burden-shifting framework.  As discussed below, Gillaspie also cannot succeed on the third element of establishing a prima facie case of discrimination for a second reason.

### ii.  Action Taken Solely on the Basis of Disabilty

Even if Gillaspie made a sufficient showing of an adverse employment action, to establish the third element of her prima facie case, Gillaspie must also show that the adverse action was taken solely on the basis of her disability.  See Coats, 916 F.3d at 342.  The R&R found that Gillaspie's prima facie case of discrimination alternatively failed on this ground.  In other words, the R&R explained that even if raising her voice at Gunst was a factor in her receipt of a negative performance appraisal, Gillaspie did not produce evidence showing that she received the negative performance appraisal based solely on her disability.  Rather, Gillaspie's performance appraisal contained multiple criticisms of Gillaspie's performance and conduct unrelated to her hearing disability, including her failure to keep senior level employees informed, failure to communicate with customers in accordance with her portfolio leader's directions, failure to maintain professional decorum, and failure to follow directions provided by leaders in the organization.  The

R&R found that Gillaspie neither alleged nor produced evidence that her hearing disability caused all of these performance issues. Accordingly, the Magistrate Judge concluded that the 2014 Performance Appraisal—to the extent it could be considered an adverse action—was not based solely on her disability as a matter of law.

In her objections, Gillaspie perfunctorily states that "Gunst's lone negative inputs on the Appraisal were the sole reason that [Gillaspie] did not get the expected salary raise of 9%." ECF No. 98 at 9. Gillaspie's objections do not point to any specific error in the R&R, but instead repeat arguments already considered, and rejected, by the Magistrate Judge. Gillaspie's objections in this regard are non-specific as they merely restate Gillaspie's claims, and the court therefore reviews the Magistrate Judge's finding for clear error. See Lester v. Michael Henthorne of Littler Mendleson PC, 2014 WL 11531106, at *1 (D.S.C. Oct. 28, 2014), aff'd sub nom., 593 F. App'x 239 (4th Cir. 2015); Jesse S. v. Saul, 2019 WL 3824253, at *1 (W.D. Va. Aug. 14, 2019) (noting that it is well-settled in the Fourth Circuit that "an objection that merely repeats the arguments made in the briefs before the magistrate judge is a general objection and is treated as a failure to object"); Bolds v. S.C. Dep't of Mental Health, 2021 WL 960506, at *3 (D.S.C. Mar. 15, 2021), appeal dismissed, 2021 WL 4771842 (4th Cir. June 21, 2021). Because the court finds no clear error in the Magistrate Judge's finding that Gillaspie failed to create a genuine issue of material fact as to whether the appraisal was based solely on her

disability, the court finds that summary judgment is alternatively warranted in defendant's favor on this basis.

### b. Pretext

The R&R further found that even if Gillaspie established a <u>prima facie</u> case of discrimination—which she does not—summary judgment would still be appropriate because defendant has proffered legitimate, nondiscriminatory reasons for her 2014 Performance Appraisal score, and Gillaspie failed to submit evidence showing that the reasons are merely pretext for disability discrimination. In fact, the R&R noted that Gillaspie entirely failed to set forth any arguments of pretext with respect to her disability discrimination claim. In her objections, Gillaspie attempts to make those arguments for the first time. Gillaspie's efforts are untimely and improper.

"Consideration of efficiency and fairness militate in favor of a full evidentiary submission for the Magistrate Judge's consideration" on a motion for summary judgment. <u>Hynes v. Squillace,</u> 143 F.3d 653, 656 (2d Cir. 1998). When a magistrate judge is hearing a matter pursuant to his or her authority to make a report and recommendation, "a claimant must present all his claims squarely to the magistrate judge that is, the first adversarial forum, to preserve them for review." <u>McCarthy v. Giron,</u> 2014 WL 2696660, at *13 (E.D. Va. June 6, 2014). "A petitioner whose case is referred to the Magistrate Judge for initial handling (for findings, conclusions, and recommendation) cannot for the first time in his objections to the Magistrate Judge's findings, conclusions, and recommendation raise a ground not asserted in the petition as it existed when the matter was before the Magistrate Judge for consideration." <u>Thornton v. Johnson,</u> 2001 WL 331983, at *1 (N.D. Tex. Apr. 3, 2001); <u>see also</u> <u>Clark v. Thompson,</u> 2014 WL 1234347,

16

at *2 (D.S.C. March 25, 2014) (noting a party's new argument raised for the first time in his objections "must be overruled as untimely and thus improper"); Buford v. Ocwen Loan Servicing, LLC, 2018 WL 6617646, at *3 (E.D. Va. Dec. 18, 2018) ("Parties may not raise entirely new arguments for the first time in their objections to a magistrate judge's report."). Here, the Magistrate Judge did not err in recommending that the court find that Gillaspie failed to meet her burden of showing defendant's proffered reasons for her 2014 Performance Appraisal score were pretext for discrimination. If the court were to consider Gillaspie's belated arguments and evidence, it would defeat the purpose of 28 U.S.C. §§ 636(b)(1)(A) and (B) and Local Civ. Rule 73.02(B)(2)(g) and create inefficiencies for both the court and the parties by giving Gillaspie a second bite at the apple.[5] Therefore, the court overrules any objection related to pretext.

In sum, the court agrees with the Magistrate Judge that Gillaspie cannot succeed on her discrimination claim either by direct evidence or by making a prima facie case of discrimination under the McDonnell Douglas burden-shifting framework. The court

---

[5] Regardless, Gillaspie's belated pretext argument fails. Gillaspie simply argues that Gunst—the person who allegedly consistently made comments about her disability—was the "lone dissenter" who saw fit to give negative feedback on Gillaspie's performance for her appraisal. ECF No. 98 at 11. Again, Gillaspie cites "ROI at 22"—a citation to her own words—for this proposition. This "evidence" is insufficient to support a reasonable inference that all the criticisms regarding her performance originated with Gunst or that they were not well-founded. As such, this argument fails to create a genuine issue of material fact that the criticisms in her appraisal were pretext for discrimination.

therefore adopts the R&R's recommendation and grants summary judgment on the Rehabilitation Act discrimination claim in defendant's favor.

### B.  Hostile Work Environment Claim Under the Rehabilitation Act

The R&R next recommended that the court grant summary judgment in defendant's favor on Gillaspie's hostile work environment claim under the Rehabilitation Act.  To establish a hostile work environment under the Rehabilitation Act, Gillaspie must demonstrate the following elements: (1) she is a qualified individual with a disability; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer.  Fox v. Gen. Motors Corp., 247 F.3d 169, 177 (4th Cir. 2001).  Defendant moved for summary judgment on this claim, arguing that Gillaspie failed to produce evidence sufficient to establish the "severe or pervasive" element of her claim.  Accordingly, for purposes of the motion for summary judgment, the Magistrate Judge assumed that a genuine question of material fact existed as to the other four elements.

To establish that alleged harassment was sufficiently severe or pervasive, the plaintiff "must show that a reasonable jury could find that the . . . harassment was so severe or pervasive as to alter the conditions of her employment and create an abusive or hostile atmosphere."  Perkins 33 v. Int'l Paper Co., 936 F.3d 196, 207–08 (4th Cir. 2019) (citing E.E.O.C. v. Cent. Wholesalers, Inc., 573 F.3d 167, 175 (4th Cir. 2009)).  "The severe or pervasive element has both a subjective and objective component."  Id.  "[The]

plaintiff must show that [she] did perceive, and a reasonable person would perceive, the environment to be abusive or hostile."  Id.

In its motion for summary judgment, defendant did not contest that Gillaspie satisfied the subjective component of this element.  However, defendant argued that Gillaspie failed to produce sufficient evidence to establish the objective component.  In the R&R, the Magistrate Judge agreed.  Specifically, the Magistrate Judge concluded that no reasonable person would find Gillaspie's working environment "to be so out of the ordinary as to meet the severe or pervasive criterion," such that the environment "was pervaded with discriminatory conduct aimed to humiliate, ridicule, or intimidate."  R&R at 35 (citing E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 316 (4th Cir. 2008)) (internal quotation marks omitted).

In objecting to this finding in the R&R, Gillaspie restates the same arguments she made in her opposition to summary judgment.  She again argues that, over a period of several months, Gunst (1) referred to her hearing aid as "cybernetics" in a single meeting in 2013, which embarrassed her; (2) called her hearing disability "bullshit" on one occasion; and (3) accused her of raising her voice at him and made other unspecified comments about Gillaspie needing to turn up her hearing aids.  She also points to her testimony that she "lost count" of how many time Gunst brought up her disability, but that the March 5 meeting "was basically the last time [she] spoke to Ryan Gunst."  ECF No. 98 at 12 (citing ECF No. 79-1, Gillaspie Depo. at 135:10–13).  Gillaspie additionally reiterates her argument from her response that the "defining moment . . . that transforms these comments from mere 'rude treatment,' 'simple teasing,' 'offhand comments,' or 'isolated incidents,' is the intentional use of a symptom of [Gillaspie]'s disability in a

performance appraisal that had a direct effect on her salary increase and future promotional ability."  ECF No. 85 at 32.  In her objections, Gillaspie argues that the R&R failed to consider the cumulative effect of these instances of alleged harassment.  The court disagrees.  The court finds that the R&R properly considered and discussed these facts, stated the relevant law, referenced decisions of comparable cases, and properly applied the law to Gillaspie's case.  The court need not repeat that analysis here and adopts the R&R's conclusion that Gillaspie failed to clear the high bar necessary to satisfy the objectively severe or pervasive test.[6]

### C.  Claims for Retaliation under Title VII, the ADEA, and the Rehabilitation Act

In her fourth cause of action, Gillaspie alleges retaliation under the ADEA, the Rehabilitation Act, and Title VII "based upon [Gillaspie]'s multiple EEO complaints and her participation in the administrative process and her filing of Complaints in Federal Court."  Amend. Compl. ¶ 116.  She identifies the following "specific adjudicated claims" of retaliation:

> On April 19, 2018, Complainant became aware that her supervisor, [Kevin Holcomb], did not issue her a 2017 appraisal during the appraisal process

---

[6] In her objections, Gillaspie also argues for the first time that her hostile work environment claim under the Rehabilitation Act is supported by Gunst's "instigat[ation of] a campaign to depict [Gillaspie] as an unethical employee that eventually led to [Gillaspie]'s detention by federal law enforcement, suspension, and termination."  ECF No. 98 at 14.  The court is unmoved by this argument for three reasons.  First, it was not raised in her EEO complaints to support a hostile work environment claim, meaning that Gillaspie did not exhaust her administrative remedies with respect to this issue.  See Abraham v. Rohoho, Inc., 2019 WL 1715657, at *5 (D.S.C. Mar. 27, 2019) ("[F]actual allegations made in formal litigation must correspond to those set forth in the administrative charge.").  Second, this argument was not raised in Gillaspie's response in opposition to the motion for summary judgment for the Magistrate Judge's consideration.  Third, as explained infra in its discussion of Gillaspie's retaliation claims, Gillaspie has not shown that Gunst's report of Gillaspie's allegedly unethical behavior was unfounded, and the court does not find that it moves the needle on the question of whether Gillaspie's work environment was pervaded with severe discriminatory conduct.

and she was denied her right to participate in the grievance or appeal process for her rating; and [sic]

On April 19, 2018, Complainant became aware that [Kevin Holcomb] rated her in such a way that no pay raise occurred when he attributed her performance rating to the fact that she was suspended.

On July 25, 2018, Complainant learned that SSC LANT senior leadership (Naval Information Warfare Center (NIWC) Atlantic Executive Director [S3], Director of Corporate Operations [CORP-OPS], and Chief Engineer [S4]) did not conduct management inquiries into her previous claims of harassment and discrimination (original NOA Claim e); and

On July 20, 2019, Complainant was reprised against (prior EEO activity of December 9, 2014) when [Rideout] issued her a Notice of Proposed Removal dated June 20, 2019.

Id.  Gillaspie also alleges that her termination from government service without cause was retaliatory.  Id. ¶ 117.

Title VII forbids an employer from taking action that discriminates against an employee because that employee either has "opposed any practice made an unlawful employment practice" by Title VII or has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e–3(a).  The purpose of this anti-retaliation provision is to prevent "an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 63 (2006).  Similarly, 42 U.S.C. § 633a(a) prohibits retaliation against a federal employee who complains of age discrimination.  Gomez-Perez v. Potter, 553 U.S. 474, 477 (2008).  Likewise, the Rehabilitation Act incorporates the ADA's anti-retaliation provision, which prohibits "discrimination against any individual because [she] has opposed any act or practice made unlawful by" the ADA.  29 U.S.C. § 794(d); 42 U.S.C. § 12203(a).  Gillaspie may prove her retaliation claim through either direct

evidence of retaliatory animus or the <u>McDonnell Douglas</u> burden-shifting framework.
<u>Roberts v. Glenn Indus. Grp., Inc.</u>, 998 F.3d 111, 122 (4th Cir. 2021); <u>Foster v. Univ. of Md.-E. Shore</u>, 787 F.3d 243, 249 (4th Cir. 2015).

 The Magistrate Judge concluded in the R&R that Gillaspie did not produce direct evidence of retaliation and likewise failed to meet her burden under the <u>McDonnell Douglas</u> burden-shifting framework.  Gillaspie objects to both findings, discussed in turn below.

### 1. Direct Evidence

 In her response to the summary judgment motion, Gillaspie claimed her denial of a leadership training opportunity was direct evidence of retaliation.  After rejecting that argument, the Magistrate Judge found that Gillaspie pointed to no direct evidence of retaliation.  Gillaspie specifically objects to the lack of discussion in the R&R of Shawntelle Matney's ("Matney") testimony as direct evidence of retaliation related to the revocation of Gillaspie's security accesses and clearances and her suspension.  Gillaspie summarizes that testimony as follows:

> Ms. Matney was the only individual at SPAWAR tasked with researching revocations of access and clearances.  <u>Id.</u> at 17.  She had never in twenty years with the Department of the Navy made a single recommendation that was not followed.  <u>Id.</u> at 18.  That is, until her recommendation not to suspend [Gillaspie].  <u>Id.</u> at 18.  She testified that, at SPAWAR, a list of individuals with EEO claims exists, that [Gillaspie]'s name was on that list, and that the revocation of those individuals was done "as punishment" by SPAWAR[7].  <u>Id.</u> at 19; ECF No. 84-21 p. 25, Depo. p. 91.  To quote Ms.

---

[7] Ms. Matney made a complaint to the SPAWAR EEO office and her local accesses were suspended "immediately after" her complaint, a similar result to the actions taken against [Gillaspie] for her complaints.  ECF No. 84-21 p. 37, Depo. pp. 139-141.

> Matney directly, " . . . it was her EEO cases that triggered them wanting to remove her access. That was it." ECF No. 84-21 p. 27, Depo. p. 100.

ECF No. 98 at 18–19 (footnote in original). Gillaspie argues that the Magistrate Judge should have discussed this testimony and ultimately concluded that Gillaspie presented sufficient direct evidence of retaliatory animus to survive summary judgment.

The court finds that the R&R sufficiently explained why the court should not consider evidence relating to the suspension of Gillaspie's security clearance and accesses, including Matney's testimony. As the Magistrate Judge pointed out, "these claims of retaliation were the subject of a prior lawsuit that was dismissed by this Court with prejudice." R&R at 48 (citing Gillaspie v. Spencer, No. 2:18-cv-2207-DCN-MGB, ECF No. 56 at 17–19 (alleging retaliation claims based on "the removal of her accesses, the indefinite suspension of [Gillaspie], the recording of the search of her office as a 'security incident' in the JPAS system, and indefinitely suspending [Gillaspie] without reasonable justification"); id. at ECF No. 73 at 6 (dismissing all of Gillaspie's claims with prejudice)). The Magistrate Judge found that "[a]s these claims have been dismissed with prejudice by the Court in a different lawsuit, [Gillaspie] cannot establish a viable retaliation claim based on these alleged adverse actions in this lawsuit." R&R at 48.

In her objections, Gillaspie argues that she "cannot stress enough that she understands that the claims in her previous litigation have been dismissed, and that she cannot recover on those claims, but the facts remain evidence of retaliatory intent and animus." ECF No. 98 at 19 (emphasis in original). In other words, Gillaspie concedes that she does not have a retaliation claim based on the suspension of her security accesses or the related indefinite suspension of her employment. She argues, however, that she can use these events as evidence that she was subjected to retaliation. This argument,

which Gillaspie does not buttress with any legal authority, defies logic. Gillaspie's

retaliation claims based on the removal her security accesses and her indefinite

suspension have been dismissed with prejudice, and the Magistrate Judge correctly

concluded that the court should not consider evidence thereof to support a claim of

retaliation in this case. The portion of Matney's testimony on which Gillaspie relies

solely relates to the decision to remove Gillaspie's accesses. Gillaspie fails to explain

how this statement has any nexus to any of the alleged retaliatory acts that form the basis

of this lawsuit. Even if the statement were related, if Gillaspie's retaliation claims based

on the suspension of her security accesses and her indefinite suspension did not

previously withstand legal scrutiny, those claims may not be applied again with little

more than different window dressing. Therefore, the court finds that Matney's testimony

does not alter the Magistrate Judge's conclusion that there is no direct evidence of

retaliation. The court overrules the objection.[8]

## 2. Burden-Shifting Framework

Because Gillaspie did not present direct evidence of retaliation, the Magistrate

Judge rightfully determined in the R&R that Gillaspie must rely on the burden-shifting

framework to survive summary judgment on her retaliation claim. To prevail under the

---

[8] Additionally, even if the removal of accesses and suspension claims were not barred, Matney was not the employee who decided to suspend Gillaspie or remove her security accesses. Rather, Matney testified that she recommended against defendant taking such action. Her testimony, then, is not the same as the employer announcing, admitting, or otherwise unmistakably indicating that Gillaspie's protected category was the determining factor in that decision. Rather, Matney merely speculates as to an improper motivation behind the actions taken against her and Gillaspie. The only basis for her belief that the revocations were done as "punishment" for filing EEO complaints appears to be the fact that Matney likewise filed an EEO complaint and thereafter had her accesses suspended. This allegation falls far short of direct evidence of retaliatory animus.

McDonnell Douglas framework, a plaintiff must first establish a prima facie case of retaliation. Roberts, 998 F.3d at 122. After a prima facie case is made, the burden shifts to the employer to show that it took adverse action for a legitimate, non-retaliatory reason. Id. If the employer makes this showing, the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating the employer's purported non-retaliatory reasons were pretext for retaliation. Id.; see Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 148 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").

To establish a prima facie case of retaliation, Gillaspie must point to evidence showing that (1) she engaged in a protected activity, (2) her employer acted adversely against her, and (3) there was a causal connection between the protected activity and the asserted adverse action. Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011). An adverse action is one that "well might have dissuaded a reasonable worker" from engaging in protected conduct. Burlington N., 548 U.S. at 68 (internal quotation and citation omitted); see Ray v. Int'l Paper Co., 909 F.3d 661, 670 (4th Cir. 2018) ("[A]lthough an adverse action need not affect the terms and conditions of employment, there must be some direct or indirect impact on an individual's employment as opposed to harms immaterially related to it.") (internal quotation marks and citation omitted).

In her complaint, Gillaspie alleges multiple acts of retaliation involving various decisionmakers over a five-year period. The Magistrate Judge evaluated each act in the R&R, ultimately concluding that none supported a claim for retaliation. Because defendant did not dispute in its summary judgment motion that Gillaspie engaged in

protected activity, this conclusion in the R&R turned on two issues.  The first issue was whether Gillaspie demonstrated a causal connection between filing one or more EEO complaints and the adverse employment actions about which she complains.  The second issue was whether Gillaspie produced sufficient evidence to show that defendant's articulated legitimate, non-retaliatory reasons for the alleged adverse actions were mere pretext for retaliation.  The R&R answered both questions in the negative.  Gillaspie objects, arguing that the Magistrate Judge did not properly consider evidence of pretext and causation in connection with her removal as an "Integrated Product Team" ("IPT") lead, her co-workers' reports of her misconduct related to conflicts of interests, her treatment in connection with a search warrant by the Naval Criminal Investigative Service ("NCIS") and the Defense Criminal Investigative Service ("DCIS"), SPAWAR's failure to conduct management inquiries into her reports of discrimination, and her termination.  The court discusses each objection in turn below.

### a.  Removal as IPT Lead

Gillaspie alleges that her removal from the position of IPT lead was retaliatory. The R&R found, and Gillaspie does not dispute that, Steve Dunn ("Dunn"), the Executive Director of SPAWAR, made the decision to remove Gillaspie as the IPT lead and reassign her based on complaints about Gillaspie's performance raised by Janice Haith ("Haith"), a senior Department of the Navy manager and a stakeholder in the project on which Gillaspie worked.  The R&R observed that Gillaspie "neither alleged nor produced evidence that she had raised any EEO complaints to or regarding Dunn or Haith at the time of this action."  R&R at 45.  The R&R further noted that "there is no evidence that either Dunn or Haith knew about any of the complaints that [Gillaspie] had made to

[anyone] about discrimination or harassment." Id.  Because Gillaspie did not produce

evidence showing that the decisionmaker removing her as cloud team lead had actual

knowledge of her protected activity, the Magistrate Judge found that Gillaspie failed to

establish the causation element of her prima facie claim of retaliation based on her

removal as IPT lead.

      In her objections, Gillaspie argues that the Magistrate Judge did not consider the

evidence that Gunst was the only contact that SPAWAR leadership had in investigating

Haith's complaints about Gillaspie's performance.  ECF No. 98 at 26 (citing ECF No. 85

at 9).  Gillaspie insists that, based on this evidence, it is "plausible that Gunst either

created or exaggerated the gripes that Haith had with [Gillaspie's performance.]"  ECF

No. 98 at 26.  The court is unconvinced.  Even if Gunst were the source of Haith's

concerns over Gillaspie's performance,[9] Gillaspie provides no authority for her

proposition that she can satisfy the causation element by showing that Gunst created or

exaggerated the performance issues underlying Dunn's decision to remove Gillaspie as

IPT lead.  As the R&R explained, "where a relevant decisionmaker is unaware of any

prior complaints, a plaintiff cannot establish the necessary causal connection between her

prior complaint and the adverse action."  R&R at 41 (citing Roberts, 998 F.3d at 124;

Dowe v. Total Action Against Poverty, 145 F.3d 653, 657 (4th Cir. 1998) ("To satisfy the

third element, the employer must have taken the adverse employment action because the

---

[9] Despite Gillaspie's suggestion to the contrary, in the testimony that Gillaspie
cites, Haith does not state that she did not have her own concerns about Gillaspie's
performance or that she only passed along Gunst's complaints; she simply states that, to
verify Haith's own complaints about Gillaspie's performance, she recalls defendant
contacting Gunst for confirmation.  A reasonable juror could not infer from this
testimony, without speculating, that Gunst created Haith's concerns with Gillaspie's
performance.

plaintiff engaged in a protected activity. Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case.")). Accordingly, Gillaspie was required to show that Dunn had knowledge that Gillaspie complained about discrimination or harassment. But Gillaspie's arguments in her objections simply have no bearing on Dunn's knowledge of her protected activity. Gillaspie points to no evidence of such knowledge in her objections, and therefore the court agrees with the Magistrate Judge that Gillaspie cannot sustain a retaliation claim based on her removal from her lead position.

Gillaspie further argues for the first time that Gunst's alleged acts of relaying "false information" to Dunn are actionable retaliatory acts in and of themselves. ECF No. 98 at 28. The court rejects this argument for several reasons. To begin, Gillaspie provides no evidence to show that any negative input that Gunst provided regarding Gillaspie's performance was false. Moreover, assuming, but not deciding, that Gunst did, in fact, provide Haith or Dunn with false information regarding Gillaspie's performance, false accusations do not constitute retaliatory adverse employment actions. See Farrell v. Bd. of Educ. of Allegany Cnty., 2017 WL 1078014, at *5 (D. Md. Mar. 21, 2017) ("'[C]riticism' and 'false accusations' are insufficiently retaliatory."). And even if Gunst's alleged false accusations constituted a retaliatory adverse employment action, Gillaspie points to no evidence that Gunst was Gillaspie's supervisor at the time, and Gillaspie has failed to provide a sufficient reason why the court should otherwise hold defendant liable for Gunst's acts.[10] Just as Gillaspie fails to provide a scintilla of

---

[10] In arguing that "when the discriminatory bias of a subordinate influences an

evidence to show that any criticism about her performance was false, Gillaspie also fails

to provide any evidence to show that Dunn or Haith knew the criticism to be false.

Therefore, the court adopts the Magistrate Judge's recommendation that removal of

Gillaspie as IPT lead was not retaliatory as matter of law and further concludes that

Gunst's alleged input to Dunn regarding that decision was also not retaliatory as a matter

of law.

### b.  Reports of Conflicts of Interests

Gillaspie next alleges that reports[11] that she had a conflict of interest in

connection with a contracting matter were retaliatory and led to her complete removal

"from cloud work and place[ment] into an entirely different area of work in SPAWAR."

Amend. Compl. ¶¶ 60–66; ECF No. 85 at 43.  She also alleges that accusations by the

Office of General Counsel that she failed to properly complete her report of her conflicts

of interest were retaliatory and resulted in a wrongful criminal investigation by NCIS and

DCIS.  Amend. Compl. ¶¶ 12, 67–88.  The R&R assumed, for purposes of the summary

judgment motion only, that Gillaspie could establish her prima facie case with respect to

these actions.  The R&R nevertheless recommended granting summary judgment in

---

employment decision, the employer will be charged with the subordinate's bias," ECF
No. 98 at 25–26, Gillaspie cites the dissent in Hill v. Lockheed Martin Logistics
Management, 354 F.3d 277, 303–04 (4th Cir. 2004).  Notably, that dissent merely
acknowledges that such is the law in "most other circuits."  Hill, 354 F.3d at 303–04.
Gillaspie has not shown that the Fourth Circuit has adopted the same rule, and the court
likewise has found no such authority.

[11] The two individuals Gillaspie names as reporting her involvement in the
$10,000 DCMR package were Gunst and a deputy, Brian Ratliff ("Ratliff").  For reasons
already explained, the court is not convinced defendant can be held liable for Gunst's
actions, and the court does not have sufficient information about Ratliff's position
relative to Gillaspie to determine whether his conduct is imputable to defendant.
Nevertheless, the court indulges Gillaspie in considering whether these reports were
retaliatory.

defendant's favor on these claims because Gillaspie failed to show that defendant's articulated legitimate, non-discriminatory reasons for these actions were pretext for retaliation.

In its motion for summary judgment, defendant argued that reports of Gillaspie's conflicts of interests were not retaliatory because they were based on legitimate concerns of misconduct. Defendant cited several pieces of evidence—including Gillaspie's own testimony—showing that Gillaspie failed to accurately complete her annual confidential financial disclosure and was involved in a contract modification that authorized funding under an existing contract with Gillaspie's husband's employer. ECF No. 89 at 4–5 (citing ECF Nos. 79-11, 79-12, 79-13, 79-14, 79-15, 79-16, 79-17, 79-18, 79-19). This contract modification is referred to in the R&R as the "$10,000 DCMR package." According to defendant, Gillaspie's actions resulted in the NCIS/DCIS criminal investigation into potential conflicts of interest. In her response opposing summary judgment, Gillaspie argued that these reasons were pretextual.

Specifically, Gillaspie first argued that she self-reported the income error on her 2014 conflict of interest form—the OGE 450 form. ECF No. 85 at 43, 49. Therefore, she insisted that any suggestion that her first level supervisor, Kevin Holcomb ("Holcomb"), discovered an error on her OGE 450 form was false. The Magistrate Judge noted that the evidence shows that Gillaspie first flagged a possible error on her 2014 OGE 450 form and was advised by a paralegal in October 2014 to wait until 2015 to update that information. However, the Magistrate Judge further observed that the undisputed evidence also shows that when Gillaspie first submitted her 2015 OGE 450 form on February 9, 2015, she once again did not report any income for her husband.

Holcomb caught the error and notified Gillaspie via e-mail of the omission that same day, and Gillaspie corrected the "error in 5 minutes from e-mail notification of the missing salary information." ECF No. 85-1 at 3; ECF No. 85-8 at 9 ¶¶ 22–24. Therefore, the Magistrate Judge concluded that Gillaspie failed to produce evidence demonstrating that defendant's reason for raising concerns about omissions on her OGE 450 form was false or pretextual.

Although Gillaspie did not directly argue that the reasons for the reports of her conflict of interest with the $10,000 DCMR package were pretextual, she suggested that this was the case because her co-workers did not investigate the reason that Gillaspie was involved in the contract action before reporting the same. The Magistrate Judge did not find this argument compelling and found that because Gillaspie did not produce any evidence suggesting that she was not involved in the $10,000 DCMR package or that she recused herself, Gillaspie did not create a question of fact as to whether complaints and actions related to the DCMR Package were pretext for retaliation.

In her objections, Gillaspie argues that the OGE 450 "process," as described in a 119-page guidance document she cites, somehow "clearly shows" that Gillaspie self-reported her errors on her form based on the timing of Holcomb's review and certification. ECF No. 98 at 33. The court finds Gillaspie's argument on the matter anything but clear and declines to sift through the cited guidance to ascertain how that document supposedly shows that Gillaspie was forthright. Moreover, Gillaspie submitted a "Verified Timeline" noting that on February 9, 2015, "Kevin Holcomb ca[ught] error on OGE 450 per process. [Gillaspie] correct[ed] error in 5 minutes from e-mail notification of the missing salary information." ECF No. 85-1 at 3. Therefore, by

Gillaspie's own account, she omitted information on her OGE 450 until she was "ca[ught] by Holcomb," and the court agrees with the Magistrate Judge that Gillaspie fails to point to evidence demonstrating that defendant's reason for raising concerns about omissions on her OGE 450 form was false or pretextual. Id.

Additionally, Gillaspie argues in her objections that the R&R failed to consider that the $10,000 DCMR package in which she was involved, notwithstanding her conflict of interest, was never actually processed and was discarded. The court finds this argument immaterial to the pretext analysis. Gillaspie alleges that her co-workers' reports of the discarded $10,000 DCMR package were retaliatory. The legitimate, non-discriminatory reason for those reports was Gillaspie's name on the package as the requesting employee despite her conflict of interest in the matter. The fact that the $10,000 DCMR package was ultimately discarded and never processed does not make the reasons for the report pretextual or unworthy of credence. Certainly, Gillaspie's involvement in a contract with which she had a conflict of interest and for which she should have recused herself warranted a report up the chain for further review. Gillaspie concedes that her name appeared on the face of the discarded package as the requestor. Gillaspie's involvement in the contract was the misconduct for which she was reported, and Gillaspie does not point to any policy or otherwise explain how her conduct was rendered proper or not subject to disciplinary action simply because funding under the package was not ultimately rewarded. The court is therefore unconvinced and agrees

with the Magistrate Judge that Gillaspie fails to create a genuine issue of material fact that the proffered reasons for the reports were pretext for retaliation.[12]

### c.  NCIS/DCIS Search Warrant

Gillaspie also alleges retaliation in connection with the execution of a search warrant by NCIS and DCIS.  In late January or early February 2017, NCIS executed a search warrant in Gillaspie's office at SPAWAR.  ECF No. 79-17.  Gillaspie's computers and effects were searched and some were seized by NCIS.  According to Gillaspie, she was detained by six federal officers while she was working in her office at SPAWAR, and she was presented with an NCIS Statement of Probable Cause alleging that "Investigation revealed that you [Cristina Gillaspie] did not disclose potential financial conflict of interest on your [OGE 450] Forms as you are required to do, and you took official actions on contracts affecting your spouse's [Timothy Gillaspie] financial interest."  Amend. Compl. ¶ 92.

The R&R found that Gillaspie could not succeed on a retaliation claim based on the NCIS search warrant because she did not produce any evidence demonstrating that the NCIS or DCIS agents had knowledge of Gillaspie's EEO activities at that time.  In her objections, Gillaspie argues that the R&R misstates her retaliation claim in this regard.  She posits that "[i]t is not the 'execution' of the warrant that [Gillaspie] complains is retaliatory—rather the manner in which it evolved, the veracity of the

---

[12] For similar reasons, Gillaspie's gripes with the NCIS and DCIS investigation likewise fail.  The NCIS and DCIS investigation, as Gillaspie herself points out, arose out of reports of Gillaspie's misconduct related to her conflicts of interest.  Because Gillaspie has not produced evidence that those reports constituted improper retaliation, Gillaspie has not shown that the NCIS and DCIS investigation of those reports was "poisoned" by any such retaliation.  ECF No. 98 at 34.

document, and the actions on the day of the execution by both SPAWAR and other DOD and Navy agents." ECF No. 98 at 29. Accordingly, Gillaspie specifically objects in three respects. First, she argues that she has presented strong evidence that the affidavit that led to the search warrant was, in part, a fabrication. Specifically, Gillaspie maintains that two individuals were attributed quotes in the affidavit for which they either have no memory of or deny making. Second, Gillaspie argues that a jury could infer retaliatory animus because Jackie Goff ("Goff"), a high-level female SPAWAR employee who was allegedly accused of the same misappropriation as Gillaspie, was treated more favorably in a similar raid. Specifically, Goff was not in attendance when a search and seizure was conducted on her office, and she was not detained. In contrast, Gillaspie claims she was "paraded and detained by armed federal law enforcement." ECF No. 85 at 15. Third, Gillaspie argues that she produced sufficient evidence of NCIS and DCIS's knowledge by way of the testimony of DCIS agent, Doyle Mullis ("Mullis"), who stated that he was aware throughout his investigation of Gillaspie's EEO activity and that several people informed him of Gillaspie's EEO case.

These facts, even if proven, are not sufficient to save Gillaspie's retaliation claims based on the NCIS search warrant. As the R&R explained, the search warrant application was completed by NCIS Special Agent Anthony Luckman ("Luckman"), and his affidavit therein does not mention any EEO activity or complaints of any kind by Gillaspie. ECF No. 79-17. Gillaspie does not dispute this point in her objections, and she points to no evidence that Luckman had any knowledge of Gillaspie's EEO complaint. The court will not automatically impute Mullis's knowledge of Gillaspie's EEO complaints to Luckman. Without proving that Luckman had knowledge of Gillaspie's EEO activity,

she cannot prove that Luckman intentionally included any false information in the affidavit in retaliation for that activity.

Moreover, while it appears that Mullis was involved in the execution of the search warrant, the court finds as a matter of law that the manner in which the warrant was executed is not an actionable retaliatory act. The execution of a search warrant in the workplace in connection with legitimate[13]—albeit disputed—allegations of misconduct would not dissuade a reasonable employee from filing an EEO complaint. Based on the evidence before it,[14] the court has no reason to believe that the manner of execution was improper or against NCIS or DCIS's policies. See, e.g., Settle v. Balt. Cnty., 34 F. Supp. 2d 969, 992 (D. Md. 1999), aff'd sub nom., 203 F.3d 822 (4th Cir. 2000) (finding "inconvenience" or "emotional anxiety" resulting from "a disciplinary investigation [that] is reasonably rooted in articulable facts justifying such an investigation" insufficient for making a retaliation claim). Therefore, the court agrees with the Magistrate Judge that Gillaspie has not established a prima facie retaliation claim related to the search warrant arising from NCIS and DCIS's investigation.

### d.  Management Inquiry and Abandonment

In both her fifth EEO complaint and in her second amended complaint, Gillaspie alleges a retaliation claim based on defendant's alleged failure to conduct a management inquiry into her claims of harassment and discrimination. Amend. Compl. ¶ 12; see ECF

---

[13] As discussed supra, Gillaspie failed to create a genuine issue of material fact as to whether the reports of her misconduct related to her conflicts of interest were illegitimate or retaliatory.

[14] The court acknowledges that the criminal investigation into Gillaspie is now the subject of another lawsuit before this court filed by Gillaspie. See Gillaspie v. United States, Luckman, and Mullis, No. 2:21-cv-1935-DCN-MHC.

No. 39-7 at 2–3.  The R&R determined that Gillaspie abandoned that retaliation claim because she did not put forth any arguments in support of it in her response in opposition to the motion for summary judgment, instead mentioning such an inquiry only briefly in her recitation of the facts.  Gillaspie objects to the Magistrate Judge's determination that she abandoned this claim, arguing that a party's claim—in this case retaliation—is not abandoned by the failure to thoroughly brief a nuanced argument supportive of that claim.

The court overrules the objection.  Defendant brought a motion for summary judgment as to all Gillaspie's retaliation claims under Title VII, the Rehabilitation Act, and the ADEA.  To the extent Gillaspie believed that defendant's alleged failure to conduct a management inquiry supported her claim for retaliation, she was required to argue that point in response to the motion for summary judgment.  Because Gillaspie failed to do so, the court finds no error in the Magistrate Judge finding that basis for her retaliation claim abandoned.  Gillaspie seems to suggest throughout her objections that the Magistrate Judge and this court are required to comb the record to identify evidence favorable to Gillaspie and consider whether they support Gillaspie's claims without argument from counsel on the matter.  As the Fourth Circuit has now repeatedly explained, judges "are not like pigs, hunting for truffles buried in briefs.  Similarly, it is not our job to [] make arguments for either party."  Hensley v. Price, 876 F.3d 573, 581 (4th Cir. 2017).  The court therefore adopts the R&R's conclusion that Gillaspie

abandoned her claim of retaliation based on an allegation that defendant failed to conduct a management inquiry.

### f. Termination

Finally, Gillaspie alleges that the Proposed Notice of Removal she received and her actual termination in 2019 were retaliatory. See ECF No. 85 at 44–45. Gillaspie's second-level supervisor, Ann Rideout ("Rideout"), prepared the Proposed Notice of Removal, and the acting Executive Director, Peter Reddy ("Reddy") made the ultimate decision to terminate Gillaspie. ECF No. 79-26. Assuming, without deciding, that Gillaspie could establish a prima facie case of retaliation based on her termination, the Magistrate Judge concluded that Gillaspie had not proffered sufficient evidence to show that defendant's articulated reasons for her termination were pretextual or that retaliation was the real reason for her termination.

According to defendant and as set forth in Reddy's Decision on Proposed Removal, Gillaspie was terminated at SPAWAR based on her omissions in her conflict-of-interest disclosures, improper disclosure of protected information, failure to follow instructions, apparent conflict of interest, and lack of candor. ECF No. 79-26. The R&R correctly observed that Gillaspie did not contest the specifics of these allegations. Rather, in her response in opposition to summary judgment, Gillaspie attempted to show pretext by arguing that the NCIS agents lied during their investigation into her and that Rideout and Reddy should have conducted an independent investigation into the NCIS findings, rather than relying on those findings. ECF No. 85 at 49 (conceding that whether the NCIS agents lied is "not a part of this lawsuit"). The Magistrate Judge rejected this argument, finding that Gillaspie did not present any evidence that either Rideout or

Reddy lied about their own reasoning or motivations related to Gillaspie's termination. R&R at 51 (citing <u>Dawson v. United States</u>, 549 F. Supp. 2d 736, 754 (D.S.C. 2008), <u>aff'd</u>, 368 F. App'x 374 (4th Cir. 2010) ("[I]t is not enough [for] a plaintiff to show that the suspension or demotion was based on groundless complaints, or that the employee did not, in fact, violate the employer's rules prior to the adverse action.")).

In her objections, Gillaspie argues that the Magistrate Judge incorrectly concluded that she did not carry her burden of showing that Rideout and Reddy's reasons for her termination were pretextual. She argues that she made such a showing via evidence that Rideout and Reddy failed to exercise care to protect Gillaspie from retaliation and violated SPAWAR policy in doing so. Specifically, Gillaspie submits that Rideout and Reddy were required to "(f) Ensure that disciplinary actions are not taken against employees as reprisal or retaliation for engaging in activities protected under law or regulation." ECF No. 98 at 35 (referring to "SECNAVINST 12752.1A"). She argues that the record is devoid of any evidence of a management official doing anything at all to ensure the policy protecting against retaliation was followed. As such, she argues that the Magistrate Judge should have considered this supposed policy violation sufficient evidence of pretext.

The court disagrees. To begin, Gillaspie never argued that Rideout or Reddy violated such a policy or that such a policy was illustrative of pretext in her response to the motion for summary judgment. Accordingly, the Magistrate Judge rightfully did not consider that argument, and the court overrules the objection on this basis. <u>See</u> <u>Addison v. CMH Homes, Inc.</u>, 47 F. Supp. 3d 404, 412 (D.S.C. 2014) (stating the court has no obligation to consider new arguments a party raises for the first time in her objections to

an R&R).  Moreover, even if the court were to consider the argument, it is unpersuaded.

Rideout testified that the documentation she relied on in recommending Gillaspie's

termination came directly from the NCIS/DCIS investigation.  ECF No. 84-10 at 12.

Rideout testified, "I didn't feel like it was my job to go investigate when there was an

investigation already occurring."  ECF No. 84-10, Rideout Dep. at 36:9–11.  Likewise,

Reddy explained in his Decision on Proposed Removal that he carefully reviewed and

considered Rideout's Notice of Proposed Removal, the material on which Rideout relied,

and Gillaspie's three replies to the notice in determining whether the charges were

validated by a preponderance of the evidence.  The policy does not affirmatively require

Rideout or Reddy to undertake any independent investigation, and Gillaspie points to no

evidence that Rideout or Reddy had reason to doubt the results of the NCIS/DCIS

investigation or knew that the investigation was the result of retaliation.  Therefore,

Gillaspie has not created a genuine issue of material fact as to whether Rideout violated

any internal policy in this instance.

　　　　Moreover, even if Gillaspie showed that the lack of investigation amounted to a

policy violation, the court is not convinced that such a policy violation creates a genuine

issue of material fact on the element of pretext.  Gillaspie has not shown that the policy

was applied—or, in this case, disregarded—selectively against her, and therefore the

caselaw she cites is inapposite.  See Merritt v. Old Dominion Freight Line, Inc., 601 F.3d

289, 299 (4th Cir. 2010) (finding trier of fact could reasonably find that selective

application of a policy was designed to conceal an intent to discriminate).  At bottom,

"when an employer gives a legitimate, non-discriminatory reason for discharging the

plaintiff, 'it is not [the court's] province to decide whether the reason was wise, fair or

even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.'" Hawkins v. PepsiCo, Inc., 203 F.3d 274, 278, 281 n.1 (4th Cir. 2000) (quoting DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998)). Gillaspie's extensive efforts to rebut the results of the investigation and the conclusions of Rideout and Reddy simply do not provide a legally sufficient basis for finding that Gillaspie's termination was retaliatory.

Overall, Gillaspie has failed to produce a scintilla of evidence to support a retaliation claim in connection with any of the above-mentioned acts individually or under the totality of the circumstances. Therefore, the court adopts the R&R's recommendation and grants summary judgment in defendant's favor on Gillaspie's retaliation claims.

## IV.   CONCLUSION

For the foregoing reasons the court **ADOPTS** the R&R and **GRANTS** the motion for summary judgment in favor of defendant on all claims.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 29, 2022**
**Charleston, South Carolina**