**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| CHRISTINA GILLASPIE,            ) | |
|                       Plaintiff,            ) | No. 2:19-cv-00453-DCN-MHC |
| vs.                                          ) | **ORDER** |
| CARLOS DEL TORO, *Secretary of the Navy*,            ) | |
|                     Defendant.          ) | |

This matter is before the court on plaintiff Christina Gillaspie's ("Gillaspie") motion to reconsider, ECF No. 105. For the reasons set forth below, the court denies the motion.

## I.  BACKGROUND

Gillaspie is a female, over the age of forty, and an Asian-Pacific Islander. ECF No. 103. She is unable to hear in her left ear due to a degenerative condition. Id. Gillaspie was a civilian employee of the Navy and worked at the Space and Naval Warfare Systems Command ("SPAWAR") in North Charleston, South Carolina from September 18, 2006 until her employment was terminated on November 1, 2019. Id. Between August 2014 and November 2018, Gillaspie filed at least five different Equal Employment Opportunity ("EEO") complaints regarding various acts of alleged discrimination and retaliation at SPAWAR. Id. Three of these complaints form the basis of this civil action, while the claims raised in two other complaints were dismissed with prejudice by this court in a prior lawsuit. Id. Specifically, in this action, Gillaspie alleges causes of action for employment discrimination and retaliation pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 623(a) ("ADEA"); Title VII of the Civil

1

Rights Act of 1964, 42 U.S.C. § 2000e-16(c) ("Title VII"); and the American with Disabilities Act, 42 U.S.C. § 126, et seq. ("ADA"), as applied through § 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791, et seq. ECF No. 39, Amend. Compl.[1]

Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.), all pretrial proceedings in this case were referred to Magistrate Judge Molly H. Cherry. On July 26, 2021, defendant Carlos Del Toro, as Secretary of the Navy ("defendant"),[2] filed a motion for summary judgment. ECF No. 79. On January 24, 2022, Magistrate Judge Cherry issued a report and recommendation ("R&R"), recommending that the court grant the motion. ECF No. 93. On March 29, 2022, the court adopted the Magistrate Judge's R&R and granted summary judgment in defendant's favor on all of Gillaspie's claims. ECF No. 103. Judgment was entered on March 31, 2022. ECF No. 104. On April 26, 2022, Gillaspie filed a motion to reconsider. ECF 105. On May 11, 2022, defendant responded, ECF No. 106, and on May 18, 2022, Gillaspie replied, ECF No. 107. As such, the motion to reconsider has been fully briefed and is ripe for the court's review.

## II. STANDARD

Federal Rule of Civil Procedure 59(e) allows a party to file a motion to alter or amend a judgment. The rule provides an "extraordinary remedy which should be used sparingly." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998) (internal quotation marks omitted). The Fourth Circuit recognizes "only three limited

---

[1] The specific facts underlying these claims are extensive and are summarized in the R&R. The court defers to the R&R's summary for background purposes.

[2] Del Toro became Secretary of the Navy on August 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Del Toro was substituted as the defendant in this matter.

grounds for a district court's grant of a motion under Rule 59(e): (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available earlier; or (3) to correct a clear error of law or prevent manifest injustice." Wilder v. McCabe, 2012 WL 1565631, at *1 (D.S.C. May 2, 2012) (citing Hutchinson v. Staton, 994 F.2d 1076 (4th Cir. 1993)). To qualify for reconsideration under the third exception, an order cannot merely be "maybe or probably" wrong; it must be "dead wrong," so as to strike the court "with the force of a five-week-old, unrefrigerated dead fish." TFWS, Inc. v. Franchot, 572 F.3d 186, 194 (4th Cir. 2009) (quoting Bellsouth Telesensor v. Info. Sys. & Networks Corp., 1995 WL 520978, *5 n.6 (4th Cir. 1995) (unpublished)).

## III.   DISCUSSION

Gillaspie asks that the court reconsider its order adopting the R&R and granting summary judgment in defendant's favor. In particular, Gillaspie lodges four challenges to the court's order that she claims rise to the level of clear error or manifest injustice. First, she argues that the court improperly declined to consider evidence of defendant's suspension of her security clearance and facility access. Second, she argues that the court failed to consider the timing and manner of Ryan Gunst's ("Gunst") report of Gillaspie's conflict of interest as evidence of pretext for retaliation. Third, Gillaspie argues that the court neglected to consider whether Gillaspie's removal as a lead of the Integrated Product Team ("IPT") was retaliatory under the "cat's paw" theory of liability. ECF No. 105 at 12. Fourth, Gillaspie argues that the court did not view the evidence in the light most favorable to her when it determined that she could not succeed on a retaliation claim related to the Naval Criminal Investigative Service ("NCIS") and the Defense Criminal Investigative Service's ("DCIS") execution of the search warrant against her. The court

addresses each argument in turn, ultimately finding no clear error or manifest injustice in its order granting summary judgment in defendant's favor.

### A. Suspension of Security Clearance and Access

Gillaspie first argues that the court erred by refusing to consider any facts related to the suspension of Gillaspie's security clearance and facility access. ECF No. 105 at 2. By way of background, the R&R recommended that the court decline to consider evidence relating to the suspension of Gillaspie's security clearance and accesses, including the testimony of Shawntelle Matney ("Matney"). Gillaspie specifically objected to the lack of discussion in the R&R of Matney's testimony as direct evidence of retaliation. In overruling that objection, the court agreed with the reasoning set forth in the R&R and provided further explanation as to why Gillaspie's request that the court consider such evidence "defie[d] logic." ECF No. 103 at 24. In short, in a prior lawsuit, Gillaspie brought a claim for retaliation based on the suspension of her security clearance and facility access. This court dismissed that case with prejudice because Department of Navy v. Egan, 484 U.S. 518 (1998), and subsequent Fourth Circuit cases prevent a court from reviewing the substance of the Navy's decision to deny or revoke security clearances. See Gillaspie v. Spencer, 2:18-cv-2207-DCN-MGB, ECF No. 73. In the instant case, Gillaspie sought to use evidence of the same suspension to prove her retaliation claims arising from other alleged adverse employment actions. However, if Gillaspie were permitted to use her suspension as evidence of retaliation, defendant would need to refute that evidence by setting forth any legitimate reasons for her suspension. This would require the court to delve into the substance of the Navy's security clearance determination—the very review that Egan prohibits. As the court

explained in its order granting summary judgment, "[t]he portion of Matney's testimony on which Gillaspie relies solely relates to the decision to remove Gillaspie's accesses." ECF No. 103 at 24. Therefore, the court disregarded that testimony in analyzing Gillaspie's retaliation claims. It is apparent that Gillaspie disagrees with the court's reasoning and decision to disregard evidence of her security clearance suspension. However, "a party's mere disagreement with the court's ruling does not warrant a Rule 59(e) motion, and such motion should not be used to 'rehash' arguments previously presented or to submit evidence which should have been previously submitted." Consulting Eng'rs, Inc. v. Geometric Software Sols. & Structure Works LLC, 2007 WL 2021901, at *2 (D.S.C. July 6, 2007). The court sees no clear error or manifest injustice in its finding that Gillaspie may not rely on Matney's testimony—or other evidence related to her security clearance suspension—to defeat summary judgment on her retaliation claims.

### B. Conflict of Interest

Gillaspie next argues that the court erred in granting summary judgment on her retaliation claim based on Gunst's report of Gillaspie's conflict of interest. In particular, Gillaspie argues that the court overlooked or failed to consider evidence of the time and manner in which Gunst reported Gillaspie's conflict of interest. ECF No. 105 at 10. When analyzing this claim in its prior order, the court assumed without deciding that Gillaspie could establish a prima facie based on Gunst's report of Gillaspie's conflict of interest.[3] ECF No. 103 at 29. However, the court agreed with the Magistrate Judge that

---

[3] Although the court did not decide the motion for summary judgment on this basis, the court doubts that a co-worker's valid report of improper conduct can constitute

5

Gillaspie failed to point to evidence demonstrating that Gunst's legitimate, non-discriminatory reason for reporting the conflict was false or pretextual. Importantly, Gillaspie never argued that the conflict of interest that Gunst reported was untrue. She merely argued that Gunst's alleged delay in reporting the same to the Office of the Inspector General, as well as his additional report of that conflict to the Legal Office, showed pretext. The court found that because Gillaspie presented no evidence that Gunst's report of Gillaspie's allegedly unethical behavior was unfounded, Gillaspie failed to create a jury issue as to the pretext element of her retaliation claim based on Gunst's report. Again, although Gillaspie disagrees with that conclusion, she has not convinced this court on reconsideration that its conclusion was "dead wrong." TFWS, 572 F.3d at 194 (quoting Bellsouth, 1995 WL 520978, at *5 n.6). Therefore, the court declines to alter its judgement.

### C. IPT Lead Removal

Gillaspie next asks the court to reconsider its grant of summary judgment as to her claim that her removal as IPT lead was retaliatory. Gillaspie argues that the claim should proceed to trial based on the "cat's paw" theory of liability. ECF No. 105 at 12. Notably, Gillaspie did not argue this theory of liability in her response in opposition to defendant's motion for summary judgment. ECF No. 85. Rather, Gillaspie raised that argument for the first time in her objections to the R&R. ECF No. 98 at 25– 28. As such, Gillaspie's argument regarding the cat's paw theory of liability was untimely and improper, and this court is not required to consider it. See Clark v. Thompson, 2014 WL

---

an adverse employment action. And, as explained below and in its prior order, Gillaspie did not create a genuine issue of material fact as to Gunst's status as a supervisor.

1234347 at *2 (D.S.C. Mar. 25, 2014). Moreover, in her objections to the R&R, Gillaspie only cited the <u>dissent</u> in a Fourth Circuit case as authority for applying the cat's paw theory of liability. Naturally, this court did not find that citation compelling, and the court was not required to locate appropriate Fourth Circuit authority on Gillaspie's behalf to support her argument.[4] As the Fourth Circuit has explained, and as this court has repeatedly stressed, judges "are not like pigs, hunting for truffles buried in briefs. Similarly, it is not our job to [] make arguments for either party." <u>Hensley ex rel. N.C. v. Price</u>, 876 F.3d 573, 581 (4th Cir. 2017).

        Additionally, the court explained in its order why the cat's paw theory of liability could not save Gillaspie's retaliation claim from summary judgment. Gillaspie argued in her objections, and now argues in her motion to reconsider, that under the cat's paw theory of liability, supervisory retaliators can create liability for the employer. In other words, "if a supervisor performs an act motivated by [] animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable." <u>Staub v. Proctor Hosp.</u>, 562 U.S. 411, 422 (2011). Gillaspie maintains that, pursuant to this theory, defendant is liable for Gunst's alleged creation or exaggeration of the performance issues underlying

---

[4] The court directly addressed this flaw in Gillaspie's cat's paw theory of liability in a footnote, explaining,
> In arguing that "when the discriminatory bias of a subordinate influences an employment decision, the employer will be charged with the subordinate's bias," ECF No. 98 at 25–26, Gillaspie cites the dissent in <u>Hill v. Lockheed Martin Logistics Management</u>, 354 F.3d 277, 303–04 (4th Cir. 2004). Notably, that dissent merely acknowledges that such is the law in "most other circuits." <u>Hill</u>, 354 F.3d at 303–04. Gillaspie has not shown that the Fourth Circuit has adopted the same rule, and the court likewise has found no such authority.

ECF No. 103 at 28–29 n.10.

director Steve Dunn's decision to remove Gillaspie as IPT lead. However, as the court pointed out in its order on the R&R, "Gillaspie point[ed] to no evidence that Gunst was Gillaspie's supervisor at the time, and Gillaspie [] failed to provide a sufficient reason why the court should otherwise hold defendant liable for Gunst's acts." ECF No. 103 at 28. In other words, the court explained that Gillaspie could not succeed on a supervisory theory of liability without arguing or providing evidence that Gunst was Gillaspie's supervisor. In her motion to reconsider, Gillaspie attempts for the first time to present evidence of Gunst's supervisory role over her. These efforts are too little and too late. Gillaspie had—and missed—her opportunity to make such an argument in her initial briefing on defendant's motion for summary judgment and in her objections to the R&R. Indeed, defendant stated in his motion for summary judgment that "Plaintiff conceded that Gunst was not her supervisor," ECF No. 79 at 4, and Gillaspie entirely failed to challenge that statement until now. A motion to reconsider should not be used as a "vehicle for rearguing the law, raising new arguments, or petitioning a court to change its mind." Lyles v. Reynolds, 2016 WL 1427324, at *1 (D.S.C. Apr. 12, 2016) (citing Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n.5 (2008)). Here, Gillaspie impermissibly attempts to do all three. The court finds no clear error in its consideration of Gillaspie's argument regarding the cat's paw theory of liability.

### D. NCIS/DCIS Execution of a Search Warrant

Finally, Gillaspie argues that the court erred in granting summary judgment on her retaliation claim related to the execution of a search warrant on her by NCIS and DCIS. The R&R found that Gillaspie could not succeed on a retaliation claim based on the NCIS search warrant because she did not produce any evidence demonstrating that

8

the NCIS or DCIS agents had knowledge of Gillaspie's EEO activities at the relevant times. In her objections, Gillaspie argued that she produced sufficient evidence of NCIS and DCIS's knowledge by way of the testimony of DCIS agent Doyle Mullis ("Mullis"), who stated that he was aware throughout his investigation of Gillaspie's EEO activity and that "several people" informed him of Gillaspie's EEO case. ECF No. 98 at 31. In overruling Gillaspie's objections to the R&R in this respect, the court explained that the search warrant application was completed by NCIS Special Agent Anthony Luckman ("Luckman"), and Luckman's affidavit made no mention of any EEO activity or complaints of any kind by Gillaspie. ECF No. 79-17. The court thus found that Gillaspie cited no evidence that Luckman had any knowledge of Gillaspie's EEO complaint, and "[w]ithout proving that Luckman had knowledge of Gillaspie's EEO activity, she cannot prove that Luckman intentionally included any false information in the affidavit in retaliation for that activity." ECF No. 103 at 34–35.

In her motion to reconsider, Gillaspie again argues that Mullis's testimony is sufficient evidence of Luckman's knowledge of her EEO complaints. Again, the court disagrees. A reasonable jury could not infer that Luckman knew of Gillaspie's EEO complaints just because Mullis testified that "several people" informed Mullis of those complaints.[5] Rather, based on that testimony, a jury would be required to impermissibly

---

[5] Although Gillaspie now cites additional quotations from Mullis's testimony to support her argument, Gillaspie did not reference those quotations in her objections, and the court was not expected to comb the record to locate the same. Regardless, the court's conclusion that Mullis's knowledge does not equate to Luckman's knowledge is not altered by Mullis's testimony that "We learned about the initial information for this [sic] what became the Cristina and Tim Gillaspie criminal investigation with, of course, other ancillary remedies [sic]. We learned about that from the NIWC then SPAWAR Office of Inspector General." ECF No. 64, Mullis Dep. at 60:4–8.

speculate that Luckman also knew of Gillaspie's EEO complaints at the time he completed his affidavit and applied for the search warrant. See Timms v. USAA Fed. Sav. Bank, 543 F. Supp. 3d 294, 296 (D.S.C. 2021) ("A litigant is unable to 'create a genuine issue of material fact through mere speculation [and] the building of one inference upon another.'" (internal citation omitted)). The court finds no clear error in its order finding no genuine issue of material fact with respect to Luckman's knowledge of Gillaspie's EEO complaints based on Gillaspie's briefings.

Moreover, the court found as a matter of law that the manner in which the warrant was executed did not constitute an actionable retaliatory act. As the court explained,

> while it appears that Mullis was involved in the execution of the search warrant, the court finds as a matter of law that the manner in which the warrant was executed is not an actionable retaliatory act. The execution of a search warrant in the workplace in connection with legitimate—albeit disputed—allegations of misconduct would not dissuade a reasonable employee from filing an EEO complaint. Based on the evidence before it, the court has no reason to believe that the manner of execution was improper or against NCIS or DCIS's policies. See, e.g., Settle v. Balt. Cnty., 34 F. Supp. 2d 969, 992 (D. Md. 1999), aff'd sub nom., 203 F.3d 822 (4th Cir. 2000) (finding "inconvenience" or "emotional anxiety" resulting from "a disciplinary investigation [that] is reasonably rooted in articulable facts justifying such an investigation" insufficient for making a retaliation claim). Therefore, the court agrees with the Magistrate Judge that Gillaspie has not established a prima facie retaliation claim related to the search warrant arising from NCIS and DCIS's investigation.

ECF No. 103 at 35 (footnotes omitted). In her motion to reconsider, Gillaspie "agrees that '[t]he execution of a search warrant in the workplace in connection with legitimate . . . allegations of misconduct would not dissuade a reasonable employee from filing an EEO complaint' if the warrant's service evidenced no retaliatory intent." ECF No. 105 at 15 (citing ECF No. 103 at 35) (emphasis added). She argues, however, that "the disparity of the treatment afforded [another employee] and [Gillaspie] [during the

10

execution of the search warrants against them] is consistent with an intent to retaliate against [Gillaspie]." Id.  Here, Gillaspie seems to argue that she can succeed on her retaliation claim by simply showing that NCIS/DCIS agents treated another employee differently when they executed the respective search warrants against them—regardless of whether the way she was treated during the execution of a search warrant can be considered an adverse employment action.  In this respect, Gillaspie is incorrect; an essential element of a retaliation claim is proof of an adverse employment action that "well might have dissuaded a reasonable worker" from engaging in protected conduct. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted); see Ray v. Int'l Paper Co., 909 F.3d 661, 670 (4th Cir. 2018) ("[A]lthough an adverse action need not affect the terms and conditions of employment, there must be some direct or indirect impact on an individual's employment as opposed to harms immaterially related to it.") (internal quotation marks and citation omitted).  If the manner of execution of a search warrant is not an adverse action, as this court has decided, then it matters not for purposes of Gillaspie's retaliation claim whether NCIS/DCIS agents treated her less favorably than another employee during their execution of the search warrants.

      Gillaspie also argues for the first time that her retaliation claim related to the execution of the search warrant is an actionable disparate discipline claim.  ECF No. 105 at 15 (citing Settle, 34 F. Supp. 2d at 992).  However, Gillaspie's retaliation claim based on the search warrant is not a disparate discipline claim nor was it pled as such in her EEO complaints or her complaint in this action.  Retaliation and disparate discipline claims are distinct and require proof of different elements.  See, e.g., Ingram v. Giant

11

Food, Inc., 187 F. Supp. 2d 512, 514–18 (D. Md. 2002), aff'd sub nom., Skipper v. Giant Food Inc., 68 F. App'x 393 (4th Cir. 2003) (analyzing retaliation and disparate discipline claims separately); Nesbitt v. Univ. of Md. Med. Sys., 2013 WL 6490275, at *6 (D. Md. Dec. 6, 2013) ("A disparate discipline claim also differs from a retaliation claim."). The ship has long ago sailed for Gillaspie to allege a claim of disparate discipline, and the court will not address Gillaspie's argument related to a claim not properly before it.

## IV.   CONCLUSION

For the foregoing reasons, the court **DENIES** the motion.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 25, 2022**
**Charleston, South Carolina**